(No. 42336.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
CHARLES W. PATCH, Appellant.

*Opinion filed January 28, 1970.*

ORWIN H. PUGH, Public Defender, of Murphysboro, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and RICHARD E. RICHMAN, State's Attorney, of Murphysboro, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE BURT delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Jackson County dismissing appellant's petition under the Post-Conviction Hearing Act. He also asserts a violation of his rights under the United States and Illinois constitutions.

Defendant Patch was released on conditional parole from the penitentiary at Menard and within hours was accused of committing a direct sexual assault against a 19-year-old young man. He was extradited from the State of Florida and appeared before a judge on December 20, 1966, at which time the public defender requested a preliminary hearing for him. He next appeared before a second judge on December 29, 1966, at which he was represented by the public defender. A preliminary hearing was had and he was bound over to the grand jury. On January 6, 1967, the grand

jury returned an indictment against the petitioner for deviate sexual assault. On January 9, 1967, he appeared before a third judge, along with the public defender, waived a jury, entered a plea of guilty, and was sentenced to a period of from five to ten years. There was no appeal.

On October 7, 1968, the petitioner filed a petition under the Post-Conviction Hearing Act, *pro se*. Subsequently, on March 11, 1969, his petition for post-conviction hearing was amended by the public defender to include a prayer for relief under section 72 of the Civil Practice Act. (Ill. Rev. Stat. 1967, ch. 110, par. 72.) The State's Attorney then filed a motion to dismiss the petition as amended. After a hearing on said motion, the court dismissed the petition finding there was no *bona fide* doubt as to defendant's mental capacity to enter his plea of guilty and to understand the nature and purposes of the proceedings. The petitioner has appealed from that order of dismissal.

The petitioner claims that the special progress report of a psychiatrist from the Department of Public Safety at Menard Penitentiary, if known to the trial judge at the time of the arraignment and plea of guilty, would have raised a doubt in the court's mind as to the petitioner's capacity on that date to enter his plea of guilty. The petitioner claims that prior to the proceeding in which his plea of guilty was entered he should have been accorded a hearing to determine his competency, and a jury should have been empaneled to determine that issue. The petitioner seems to base the entire case on his much-used phrase, the "real facts and circumstances surrounding the history of Charles W. Patch from the time he was seven years of age, including his sexual propensities, past history of treatment, his mental disease, his imprisonment * * *."

The progress report traces the history of the petitioner since the age of seven, and relates a number of admissions to places such as Glenwood School, Lincoln State School,

State Reformatory at Pontiac, *etc.* He was committed to the Illinois State Hospital in Elgin, Illinois, in 1945, from which he was dismissed in December of 1957 "as without psychosis and not insane but with a psychopathic personality".

The record reveals that defendant was represented at the preliminary hearing by counsel who had considerable background in criminal law, and the prosecuting witness was subjected to lengthy cross-examination. The court bound the defendant over to the grand jury, and the grand jury, after hearing evidence, indicted the defendant.

When the petitioner appeared before the circuit judge and entered a plea of guilty, he was accompanied by his attorney, the public defender. The judge at that time held a running conversation with the petitioner which consumes some six full pages in the excerpts from the record which clearly show without equivocation that the petitioner was mentally competent, knew what was going on, and understood the consequences of a plea of guilty. For example, the judge said to the petitioner: "I see that you were brought back here by the Sheriff and the State's Attorney of this County"—to which the petitioner answered: "Yes, there is a copy of the extradition". The judge then stated that he had given petitioner a copy of the indictment of the grand jury and the petitioner answered saying: "You have, your honor". The judge then asked the petitioner if he had read the indictment and the petitioner said: "Yes, and I have read the warrant". The petitioner also said: "I know what I am charged with. I understand very well". Also: "Yes, I have a lawyer, Mr. South".

Other pertinent parts of the colloquy between the court and the petitioner are as follows:

"Q. Before I accept that plea of guilty I want to talk to you. Have you been adjudicated in a court of law, such as here this morning, as a mentally ill person?

A. Your Honor, No, I have not.

Q. You have never been found mentally ill?

A. I was found not insane or feeble minded.

Q. And you don't think you are feeble-minded this morning, do you?

A. No. I don't.

Q. And you know that if the court accepts your plea of guilty it will be the duty of the court to sentence you in some manner, don't you?

A. I do. I know the consequences of the law."

Another portion of the same colloquy is as follows:

"Q. You have a lawyer here with you this morning?

A. I do.

Q. And you are satisfied with your lawyer?

A. Yes, I am.

Q. And I am sure he has told you but I am going to tell you again that you don't have to plead guilty to this charge. You are presumed to be innocent until you are found guilty by the court or by the court and a jury.

A. I understand that I am innocent until I am found guilty and I have a right to a jury according to the constitution and statute.

Q. And you understand that you are entitled to bring any witnesses that you want into court to testify in your behalf?

A. I understand."

The court also asked the petitioner: "And do you understand that if you didn't testify, the jury would be told that you didn't testify should not be used against you?" The petitioner's answer was "That is right, on the Fifth Amendment".

It is true that the petitioner stated to the judge that he was on parole from the sexual psychopathic ward and was conditionally released from Menard, but it should also be pointed out that the public defender said:

"Mr. Patch has been most cooperative with me and I

would say also for the record that I think there is some indication in his past record that he was an inmate at Lincoln State School for the Feebleminded in this state many years ago when he was a very young man, but that in my conversation and in my dealings with him I found no indication that he wasn't competent and capable of cooperating with me and in understanding what was going on. We had a preliminary hearing and he assisted at that hearing. There is every indication that he is very competent."

To that the judge responded:

"I couldn't say that there is anything the matter with him mentally. He has a good mind from all indications, I would say."

In a case where the defendant had been shot in the head, the court in *People* v. *Pridgen,* 37 Ill.2d 295, stated that the defendant is entitled to a sanity hearing only if facts have been presented to the court which raise a *bona fide* doubt of defendant's sanity so as to require a hearing. Exactly the same was decided in *People* v. *Bortnyak,* 39 Ill.2d 545. The trial judge in the instant case exercised that discretion quite well and there was no abuse of that discretion at all.

It is clear from the record that the court was aware of the defendant's background and convinced himself that the petitioner had adequate mental capacity. There are no new facts which would have raised a doubt in the judge's mind as to the defendant's competency. There is no violation of the Federal constitution or of the Illinois State constitution or of the Criminal Code of Illinois. Neither is there any question but that the trial court had jurisdiction for the crime, which was committed in the county where the proceedings took place. The fact that the petitioner had (just a matter of hours prior to the crime) been released on conditional parole from the State Penitentiary for a crime committed in Lee County does not deprive the circuit court

of Jackson County (where this crime occurred) of jurisdiction over the petitioner.

The order of the circuit court of Jackson County dismissing the petition under the Post-Conviction Hearing Act is affirmed.

*Judgment affirmed.*